**MAYALL HURLEY**
**A Professional Corporation**
**2453 Grand Canal Boulevard**
**Stockton, California 95207-8253**
**Telephone (209) 477-3833**
**ROBERT J. WASSERMAN**
**CA State Bar No. 258538**
**JENNY D. BAYSINGER**
**CA State Bar No. 251014**

**Attorneys for Plaintiff, ANDREW GERDEMAN**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ANDREW GERDEMAN**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**COUNTY OF SAN DIEGO, and DOES 1-40, inclusive,**<br><br>**Defendants.** | **Case No.:** '16CV0671 W JLB<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**1. WILLFUL FAILURE TO PAY OVERTIME [FLSA]** |

Plaintiff ANDREW GERDEMAN ("Gerdeman" or "Plaintiff") brings this action against Defendants the COUNTY OF SAN DIEGO (the "County"); and DOES 1 through 40 for general, compensatory, punitive, and statutory damages, costs, and attorneys' fees resulting from the defendants' unlawful and tortious conduct, and as ground therefore alleges.

**PARTIES**

1. Gerdeman is an individual and is, and was at all times relevant herein, a resident of San Diego County, California. At all times relevant hereto, Gerdeman was County's "employee" as that term is defined under 29 U.S.C. § 203(c)(1). At all times relevant hereto, Gerdeman was in the "employ" of County as that term is defined under 29 U.S.C. § 203(g) and working within San Diego County, California.

2. At all times relevant herein, County was Gerdeman's "employer" as that term is defined under 29 U.S.C. § 203(d).

3. Gerdeman is not aware of the true names and capacities of the defendants sued herein as DOES 1 through 40, whether individual, corporate, associate, or otherwise, and therefore sues such defendants by these fictitious names. Gerdeman will amend this Complaint to allege their true names and capacities when ascertained. Gerdeman is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that Gerdeman's injuries and damages herein alleged were legally caused by such defendants. Unless otherwise indicated, each defendant was acting within the course and scope of said agency and/or employment, with the knowledge and/or consent of said co-defendant.

4. Gerdeman is informed and believes and thereupon alleges that at all times mentioned herein, each of the defendants, including each DOE defendant, was acting as the agent, servant, employee, partner, and/or joint venturer of and was acting in concert with each of the remaining defendants, including each DOE defendant, in doing the things herein alleged, while at all times acting within the course and scope of such agency, service, employment partnership, joint venture and/or concert of action. Each defendant, in doing the acts alleged herein, was acting both individually and within the course and scope of such agency and/or employment, with the knowledge and/or consent of the remaining defendants.

5. The term "Defendants" refers to all defendants, including Doe defendants.

## **JURISDICTION AND VENUE**

6. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as the sole cause of action arises under the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

7. Venue is proper pursuant to 28 U.S.C. § 1391, subdivision (b) as the County resides within the Southern District of California. Venue is further proper in this court because the unlawful acts and omissions alleged herein took place within the Southern District of

California, and Gerdeman's former place of employment with County is located within the Southern District of California.

8. Gerdeman hereby demands a jury trial.

**GENERAL ALLEGATIONS**

9. Gerdeman began working for County as a Protective Services Worker I ("PSWI") on September 8, 2000. As a protective services worker, Gerdeman's duties focused on investigating allegations of child abuse and neglect, initiating intervention to protect children, facilitating counseling of children and parents involved in abusive/neglectful situations, monitoring foster care placement, and preparing status reports for other county employees, including prosecutors and the courts.

10. At all relevant times herein, Gerdeman was an employee of County whose compensation was governed by the Federal Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. and its accompanying regulations. He was always classified by the County as"Bi-weekly FLSA 7 days" and was an hourly, non-exempt employee.

11. Under the FLSA, a public employee such as Gerdeman can be compensated for overtime worked either by monetary compensation at the rate of 1.5 times the regular rate of pay for every overtime hour worked or by compensatory time off ("CTO") at the rate of 1.5 hours for every overtime hour worked. 29 U.S.C. § 207(o). Under the FLSA, a public employee such as County is capped at 240 hours of accumulated CTO generally although 480 hours of accumulated CTO are authorized for employees who are assigned to an emergency responses unit. 29 U.S.C. § 207(o)(3)(A). After the cap is reached, public employers must begin compensating public employees monetarily for overtime hours worked.

12. At all times relevant herein, Gerdeman was a member of the Service Employees International Union, Local 221 (the "Union"). The most recent Memorandum of Agreement between County and the SWU (the "MOA"), executed in October, 2013, imposes a cap of 120 hours of accumulated CTO. MOA Art. 5, § 2. Per the MOA, once the 120 hours cap is reached, employees must be compensated monetarily for additional overtime hours worked.

13. Gerdeman's initial assignment within the Social Welfare Unit ("SWU") of the County was in the emergency response unit. Gerdeman had that assignment through January 2, 2003.

14. Beginning in September, 2001, Gerdeman was additionally assigned to a special project at Santana High School and was tasked with providing support and response services to that institution in the wake of the March 5, 2001 shooting that took place there. During his time as a PSWI between September, 2001 and January, 2003, and particularly in connection with the Santana HS Project, Gerdeman accumulated over 500 hours in CTO from the County as compensation/remuneration for overtime hours he worked.

15. By December 13, 2002, Gerdeman had ascended to the position of PSWII. In January, 2003, Gerdeman was transferred from the emergency response unit to the care unit. Gerdeman worked as a PSWII in the care unit from January, 2003 to September, 2003/ During his time in the care unit, Gerdeman was not asked to work any time in excess of forty (40) hours per workweek. Gerdeman is informed and believes, and based thereon alleges, that he did not work overtime during his time with the care unit and was not compensated either monetarily or with CTO.

16. In September, 2003, Gerdeman was reassigned from the SWU care unit to the court unit. At that time, the County was experiencing budget constraints and the care unit staff was reduced by approximately half to account for such. Gerdeman's supervisor once he was transferred to the court unit was Gil Fierro ("Fierro"), a Protective Services Supervisor ("PSS").

17. Immediately upon Gerdeman's transfer to the court unit, Fierro explained that hours beyond forty (40) in a workweek would regularly be required and expected. Due to budget constraints and staff reduction, the court unit (along with most units within the SWU) was under-staffed. As a result, Gerdeman had a particularly large case load and his responsibilities were such that satisfactory completion of all of his duties could not be done within a forty (40) hour workweek.

/ / /

18. Fierro acknowledged the fact Gerdeman would have to work overtime to complete his tasks. Fierro further explained to Gerdeman that he could not afford to pay him overtime and instead offered an informal time-off exchange plan he called a "FLEX" plan. Fierro explained that Gerdeman could "FLEX" any hours he worked beyond forty (40) in a workweek and take a concomitant amount of time off within the next pay period to even things out. By way of example, Gerdeman was told that if he worked forty-four (44) hours in one workweek, he would have four (4) "FLEX" hours that he could take off in the next few workweeks without penalty (i.e. he could work only 36 hours the next week but still be paid for 40), but not later than the end of the subsequent pay period. The "FLEX" time Gerdeman was offered was "off the books" and was not compensated at 1.5 hours per overtime hour worked; instead only a one to one exchange was offered. Gerdeman was further told that if he did not "FLEX" the overtime he worked in a particular workweek by the end of the subsequent pay period, it would be lost. Gerdeman was regularly unable to use his "FLEX" time as the volume of work he was responsible for within the court unit did not allow for such. As a result, he was frequently given no compensation whatsoever for overtime hours worked.

19. In October, 2005, Gerdeman was promoted to the position of PSWIII. That position title was later changed to "Senior Protective Services Worker" ("SPSW"). Gerdeman remained in the position of SPSW until his retirement in March, 2016.

20. Throughout the time that Gil Fierro was Gerdeman's supervisor, Gerdeman was working under the informal "FLEX" program and was not being properly compensated for overtime as required by the FLSA.

21. In approximately December, 2008, PSS Kim Ranson ("Ranson") took over as Gerdeman's supervisor in the court unit. Ranson continued the informal "FLEX" program. On multiple occasions, Ranson explained to Gerdeman that the "FLEX" plan was intended to compensate Gerdeman "under the table" for overtime hours worked. Ranson acknowledged that the caseload Gerdeman was assigned and his job duties and responsibilities would regularly require work in excess of forty (40) hours in a workweek. Ranson explained, however, that the

reason overtime compensation had to be done this way was because the County did not have a sufficient budget to actually compensate Gerdeman for the overtime hours he was working.

22. At all times relevant herein, Ranson was aware that Gerdeman was working overtime. In fact, she directed him to work overtime and to "FLEX" any such time that he worked. Throughout Ranson's supervision of Gerdeman, she regularly increased his assignments, job duties and responsibilities. Under Ranson, Gerdeman was personally responsible for handling the caseload in two (2) of the busiest juvenile dependency courtrooms. Ranson knew Gerdeman's responsibilities required that he routinely work overtime, that his time was not being recorded accurately, and that he was not being compensated properly under the FLSA for overtime hours worked. On a regular basis, Gerdeman would email Ranson when he left work for the day—usually after 7:00 p.m—so she was directly aware of the volume and frequency of overtime work he was performing. Despite Ranson's knowledge, County did not compensate Gerdeman any overtime wages of CTO hours after approximately 2003.

23. Gerdeman is informed and believes, and on that basis alleges, that County did not maintain accurate time records for him from the period beginning in approximately 2003 and ending at the time of his retirement as it is required to do under 29 U.S.C. § 216(b). A number of County employees and supervisors were aware of the fact Gerdeman was working overtime, however. In addition to Ranson and Fierro, those employees include PSWs Ranila Allen, Allison Blackburn, and Julius Martinez and PSS Lisa Fulmore.

24. While Gerdeman does not presently have all the records necessary to make a precise calculation of the amount he is owed as a result of the consistent and willful overtime violations articulated herein within his possession, Gerdeman is informed and believes that he worked between 4 and 10 overtime hours per week from 2008 through the time he stopped working due to medical concerns in December, 2014 that was almost entirely uncompensated. Gerdeman's most recent hourly wage was $32.74. Some examples of scenarios that Gerdeman worked, and concomitant compensation he received, are outlined below:

a. Gerdeman sometimes worked fifty (50) hour weeks – 10 hours per day – and received no compensation, either monetary or via compensatory time off. During such weeks, County only compensated Gerdeman for working forty (40) hours. Gerdeman was only paid for forty (40) hours of work per workweek during almost every week from 2008 through the time of his medical leave in December, 2014.

b. Gerdeman sometimes worked ten (10) hour days for four (4) days, Monday through Thursday, and then worked a four (4) hour half-day on Friday, thus working forty-four (44) hours in the workweek. County would pay Gerdeman for working forty (40) hours despite the additional time worked. Gerdeman was not paid 1.5 times his regular rate of pay for the additional 4 hours that he worked and did not receive any compensatory time off for such overtime work.

c. Gerdeman sometimes worked more than ten (10) hour days and/or would not be able to take a full four (4) hours off on Friday, instead leaving between 2:00 p.m. and 3:00 p.m. instead of 12:00 p.m. During these weeks, Gerdeman worked between 46 and 50 hours but was compensated for only 40. He was not paid an overtime wage, or any wage, for hours worked beyond 40 and was also not provided compensatory time off.

d. Approximately four (4) times per year, Gerdeman worked four (4) ten (10) hour days and took Friday completely off. During those weeks, he worked forty (40) hours and would be compensated for working forty (40) hours.

25. Gerdeman is informed and believes, and based thereon alleges, that he worked between 276 and 690 hours of uncompensated overtime each year between 2003 and 2014; working between four (4) and ten (10) hours of unpaid overtime during each of forty-six (46) workweeks during the year (Gerdeman is excluding a 2 week vacation he usually took and four (4) weeks out of the year during which he believes he worked only forty (40) hours). Based on

Gerdeman's 2014 hourly wage, County deprived him of between $9,036.24 and $22,590.60 per year in earned wages between 2003 through the time he stopped actively working in December, 2014.

26. Gerdeman's retirement earnings are based directly on the amount of wages he earned with the County. Since the County did not accurately compensate Gerdeman for his overtime hours worked, his yearly wages for purposes of calculating the retirement income he is entitled to are inaccurately low. In addition to being deprived overtime wages, County's failure to properly compensate Gerdeman has negatively impacted his vested retirement income in that he is being, and will continue to be, deprived of vested income he rightfully earned.

27. Gerdeman continued to work under these oppressive working conditions because he had no other source of income and was not aware of his rights under the FLSA.

28. On or about December 18, 2014, Gerdeman, suffering physically and mentally because of the oppressive working conditions, went out on leave from the County. He was able to use accumulated paid time off, including unused sick, vacation, and CTO he had earned back in 2003, to make ends meet while he was out. In March, 2016, because his health had not improved, Gerdeman was forced to retire from the County.

29. As a direct and proximate result of Defendants' conduct, Gerdeman has lost income and related benefits, past and future.

**FIRST CAUSE OF ACTION**
**VIOLATION OF FAIR LABOR STANDARDS ACT**
**(Failure to Pay Overtime Compensation)**
**Against County and DOES 1 through 40**

30. Gerdeman hereby realleges and incorporates by reference Paragraphs 1 through 29 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

31. The Fair Labor Standards Act, 29 USC §§ 201 et seq. and 29 CFR §§ 778 et seq. require time and a half pay for the time an employee works over forty hours a week. 29 USC §§ 207 and 215(a) make the failure to pay overtime unlawful.

32. At all times relevant herein, County was Gerdeman's employer and required to pay Gerdeman overtime rates for all hours worked beyond forty (40) in a workweek pursuant to FLSA.

33. As discussed above, Defendants failed to provide Gerdeman with payment of 1.5 times the amount of Gerdeman's regular rate of pay for all hours worked in excess of forty (40) hours per week or CTO in the amount of 1.5 hours for every hour worked in excess of forty (40) hours per week, in direct violation of the FLSA.

34. Gerdeman is informed and believes, and on that basis alleges, that County's failure to properly compensate him for overtime work performed for its benefit was willful pursuant to 29 U.S.C. § 255(a). In particular, both Ranson and Fierro were specifically aware of the FLSA statutes and regulations governing overtime compensation and were specifically aware that Gerdeman was subject to the FLSA. Despite this knowledge, Ranson and Fierro assigned Gerdeman tasks they knew he could not complete within a forty (40) hour workweek, required Gerdeman to work overtime "under the table", and knowingly deprived him of appropriate compensation.

35. Gerdeman is further informed and believes, and based thereon alleges, that County's failure to properly pay him overtime was willful and was not the result of a good faith attempt to comply with the FLSA.

36. Wherefore, Gerdeman has been damaged as set forth above and requests relief as hereafter provided.

**PRAYER FOR RELIEF**

WHEREFORE, Gerdeman prays judgment against Defendants as follows:

**FIRST CAUSE OF ACTION AGAINST COUNTY AND DOES 1-40:**

1. For compensatory, special, and general damages, including unpaid overtime based on the hours worked and amounts paid as set forth in Paragraphs 24 and 25 above, and subject to change based on discovery; lost wages and related benefits in an

amount according to proof, but in excess of the minimum jurisdictional limit of this Court;

2. For liquidated damages in an amount equal to the unpaid overtime compensation pursuant to 29 U.S.C. § 216(b);

3. For statutory attorneys' fees and costs, including those available under 29 USC § 216(b) and Code of Civil Procedure § 1021.5;

4. For prejudgment and post-judgment interest according to any applicable provision of law or as otherwise permitted by law, according to proof; and

5. For penalties pursuant to 29 USC § 216.

6. For such other and further relief as the court deems proper.

**DATED:** March 18, 2016

**MAYALL HURLEY, P.C.**

By /s/ Jenny D. Baysinger
ROBERT J. WASSERMAN
JENNY D. BAYSINGER
Attorneys for Plaintiff,
ANDREW GERDEMAN